UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/30/2021
```

PATRICK KILGANNON,

                Plaintiff,

-against-

SOCIAL SECURITY ADMINISTRATION, et al.,

                Defendants.

1:20-cv-01891 (MKV)

**OPINION AND
ORDER GRANTING
MOTION TO DISMISS**

    Plaintiff Patrick Kilgannon brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL") against the Social Security Administration ("SSA") for damages resulting from employment discrimination. Plaintiff alleges that during his employment at the SSA he was subjected to sex discrimination, retaliation, and a hostile work environment largely as a result of romantic and sexual advances by another employee in the office. The SSA moves to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, and, in the alternative, moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated herein, the motion to dismiss is GRANTED.

## BACKGROUND

    The facts as stated herein are drawn from Plaintiff's complaint [ECF No. 2], the allegations of which are accepted as true for the purposes of the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

    At all times relevant to this case, Kilgannon was employed as a SSA Administrative Law Judge in the Long Island, New York SSA Hearing Office. Complaint, ECF No. 2 ("Compl.")

¶¶ 7-9.  At the beginning of 2015, an employee named Adelin Borges was the Senior Case Technician assigned to the cases Plaintiff oversaw.  Compl. ¶¶ 11-12.  As alleged in the Complaint, beginning in April 2015, Ms. Borges began making romantic and sexual advances toward Mr. Kilgannon, leaving photos of herself on his desk, asking him on dates, commenting on his appearance, and giving to him her personal home phone number.  Compl. ¶¶ 12, 18.  As a particularly striking example of the behavior, Mr. Kilgannon recounts an incident in April 2015 where Ms. Borges "left a white chocolate Easter bunny with a bite taken out of the crotch area on [his] desk."  Compl. ¶ 13.  At first, Plaintiff only complained to one colleague and not to his or Ms. Borges's supervisor.  Compl. ¶ 14.

In June 2015, Ms. Borges was re-assigned from her position working with Plaintiff, and Plaintiff also altered his schedule so not to be present in the office on the same days as Ms. Borges.  Compl. ¶¶ 15-16.  Despite these changes, however, Ms. Borges's conduct continued.  She began to come into the office on her assigned "telework" days (*i.e.* the days Plaintiff expected her not to be present) and left notes in Plaintiff's office when he was not there.  Compl. ¶¶ 16-17.  For example, in August 2015, Ms. Borges left a note on Plaintiff's desk asking to speak to him outside of the office "in a public place like [a] park or my place."  Compl. ¶ 19.  Soon thereafter, Ms. Borges came into Plaintiff's office and confessed her feelings for him, stating "no one has ever made her the way Plaintiff makes her feel," and then ran out of Plaintiff's office crying.  Compl. ¶ 20.  Plaintiff eventually complained about Ms. Borges's behavior to his supervisor, Hearing Office Chief Administrative Law Judge Jacquelin Haber-Lamkay.  Compl. ¶ 21.  About a month later, in October 2015, Haber-Lamkay reported to Plaintiff that she had had a conversation with Ms. Borges, but she did not take any action to limit Ms. Borges's interactions with Plaintiff.  Compl. ¶¶ 22-23.

Ms. Borges's advances toward Plaintiff began anew after she returned from medical leave in December 2015. Compl. ¶¶ 24, 26. Ms. Borges began sending pictures of herself to Plaintiff again and told him she loved him. Compl. ¶¶ 26-28. This kind of conduct continued until at least March 2016. During that time, Ms. Borges began sending Plaintiff messages stating that she loved him, that he "lit up [her] life," and that she was going to ask him on a date. Compl. ¶ 31.

When these advances did not succeed, Ms. Borges's behavior intensified. She began staring at Mr. Kilgannon when he met with other female staff in the office and started telling other employees that she was angry at Plaintiff for something he had done. Compl. ¶ 32. In March 2016, Plaintiff reported the escalating behavior to new Hearing Office Chief Administrative Law Judge April Wexler.[1] Compl. ¶ 33. After the complaint, Wexler informed Ms. Borges that she was to have no further contact with Plaintiff and reported the incidents to the SSA Manhattan Regional Office, which opened an investigation. Compl. ¶¶ 32-33. When Ms. Borges's behavior did not immediately stop, Plaintiff requested that the SSA "inform Borges that she was expected to work from home on her scheduled telework days" to avoid further contact with Ms. Borges. Compl. ¶ 38. However, the SSA informed Plaintiff that they would issue no such instruction since Ms. Borges "has rights." Compl. ¶ 38.

Plaintiff explains that his supervisors and others in the office were aware of the adverse effects Ms. Borges's behavior was having on him. Plaintiff informed Wexler and SSA investigators that Ms. Borges was causing him anxiety and that her conduct was adversely affecting his ability to perform his job. Compl. ¶¶ 37, 39. In May 2016, as part of the SSA

---

[1] This is the same person to whom Plaintiff had previously complained before she became his supervisor. Compl. ¶ 25.

investigation, Wexler signed a statement corroborating Plaintiff's account, stating that he "is very upset and has changed his behavior to avoid seeing Adelin [Borges]." Compl. ¶ 40 (alteration in original). Another official in Plaintiff's office, Hearing Office Director Edward Leong, stated that although Ms. Borges's behavior previously had improved after Plaintiff complained, she then "regressed" and "started engaging in the same behaviors as before." Compl. ¶ 41. Ms. Borges admitted to her conduct as a part of the SSA investigation. Compl. ¶ 42. Specifically, Ms. Borges admitted that "she sent non[-]work-related emails and messages to Plaintiff, sent pictures of herself to Plaintiff, told the Plaintiff that she loved him, invited the Plaintiff to go out on a date or to see each other outside of work, asked the Plaintiff to go for a run with her, and that she commented on his muscles." Compl. ¶ 42. Ms. Borges also stated that she "got to know Plaintiff's routine" and "how to disappear." Compl. ¶ 42.

On July 19, 2016, the Agency concluded its internal investigation and found that no harassment had occurred. Compl. ¶ 44. However, Wexler informed Plaintiff that notwithstanding the results of the investigation, Ms. Borges would be instructed to use a printer further away from Plaintiff's office. Compl. ¶ 45. The SSA did not change either Ms. Borges's or Plaintiff's office locations (which were approximately twenty feet apart) or enforce Ms. Borges's telework days (*i.e.* she was permitted to continue working in the office on telework days). Compl. ¶ 45. Less than a week after the investigation concluded, Plaintiff initiated counseling with the SSA Equal Employment Opportunity Office ("EEO"). Compl. ¶ 46.

After the investigation, and continuing until Ms. Borges retired in February 2017, Plaintiff alleges that Ms. Borges continued to harass him in different ways. Plaintiff alleges that she would walk by Plaintiff's office, and, when he got up from his desk, would stand inches away from him, angrily stare, and not move until Plaintiff left, sometimes also blocking

Plaintiff's path. Compl. ¶¶ 48-49. In addition to these behaviors, Ms. Borges told Plaintiff that "she knew where he lived" and that "she had a weapon." Compl. ¶ 50. Ms. Borges also told Plaintiff that her son was a New York City police officer, in an apparent attempt to intimidate him. Compl. ¶ 50. Plaintiff brought his concerns about Ms. Borges's ongoing behavior to Regional Chief Administrative Law Judge Aaron Morgan, but nothing immediately was done to address Ms. Borges's behavior. Compl. ¶¶ 52-53. Finally, as a result of the continued adverse effects Plaintiff was experiencing, Plaintiff requested, among other remedies, a transfer to the Queens SSA hearing office. Compl. ¶¶ 53-54. All of Plaintiff's proposals were denied. Compl. ¶¶ 53-54.

Plaintiff filed a formal discrimination complaint with the federal Equal Employment Opportunity Commission ("EEOC") on October 31, 2016. Compl. ¶ 57. The EEOC issued a final order denying Plaintiff's claims on November 29, 2019, and Plaintiff received the order the following week. Compl. ¶¶ 4-5. Plaintiff timely filed this case on March 3, 2020.

Defendants moved to dismiss Plaintiff's complaint and, in the alternative, moved for summary judgment on Plaintiff's claims. *See* Motion to Dismiss or for Summary Judgment, ECF No. 16. In support of their motion, Defendants filed a memorandum of law [ECF No. 17] ("Def. Br.") and a declaration sworn by the Assistant Regional Counsel to the SSA, James Desir [ECF No. 18] ("Desir Decl."). Because Plaintiff is proceeding *pro se*, Defendants also filed the notices required by Local Rules 12.1 and 56.1. *See* ECF Nos. 19-20. In response, Plaintiff filed a memorandum of law [ECF No. 22] ("Opp."), which attached multiple exhibits, most of which were files created in connection with the SSA internal investigation into Plaintiff's harassment claims. Defendants thereafter filed a reply [ECF No. 24] ("Reply").

# LEGAL STANDARDS

### A.  *Motion to Dismiss*

When deciding a motion to dismiss the Court must draw all reasonable inferences in favor of the Plaintiff and accept all allegations in the complaint as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 678 (2007). However, to meet this standard, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed when "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. If the allegations in the complaint do not amount to more than legal conclusions those allegations "are not entitled to an assumption of truth." *Iqbal*, 556 U.S. at 678.

When considering a motion to dismiss, the Court is limited to a "narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "Generally, [courts] do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be aken.'" *Id*. (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n. 2 (2d Cir. 2016)) (alterations in original).

Generally, a complaint submitted by a pro se plaintiff, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)) (internal quotation marks omitted)). However, where the *pro se* plaintiff is an attorney, even if he is disbarred or does not practice, he is not entitled to the same "special solicitude" afforded to *pro*

*se* litigants in construing the allegations of his pleading. *United States v. Pierce*, 649 F. App'x 117, 118 n.1 (2d Cir. 2016); *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

B.     *Motion for Summary Judgment*

Summary judgment is typically not appropriate in the beginning of litigation, despite its "technical timeliness." *Negrete v. Citibank, N.A.,* 15 Civ. 7250 (RWS), 2016 WL 67788, at *1. Summary judgment prior to any discovery taking place is typically rejected as premature. *Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n v. Telos CLO 1006-1 Ltd*., 274 F. Supp. 3d 191, 214 (S.D.N.Y. 2017). However, despite the limits to granting a pre-discovery motion for summary judgment, it is not impossible that a litigant may be entitled to summary judgment. *Negrete*, 2016 WL 67788, at *1. When responding to a pre-discovery motion for summary judgment, a non-movant cannot simply point to the absence of discovery, but rather they must show that discovery would "would yield information that would create a genuine dispute as to material facts." *Id.* Without this showing, summary judgment may be appropriate. *Id.*

## ANALYSIS

Plaintiff asserts claims in this case under Title VII as well as the NYSHRL and NYCHRL. As an initial matter, as a federal employee working for the SSA, Plaintiff cannot assert claims under the New York state and local laws. "[Title VII] is the *exclusive* remedy for [employment] discrimination by the federal government." *See Brown v. General Services Admin*., 425 U.S. 820, 832 (1976); *Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir.1996). As a result, Plaintiff's NYSHRL and NYCHRL claims must be, and are, dismissed.

Turning to Plaintiff's Title VII claims, Defendants move to dismiss all of Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and alternatively for summary judgment under Rule 56. Defendants argue that Plaintiff did not timely exhaust his remedies regarding claims for a hostile work environment and that, in any event, Plaintiff's

allegations do not state a valid claim for relief that he was subjected to a hostile work environment. Additionally, Defendants move to dismiss Plaintiff's retaliation and sex discrimination claims because Plaintiff does not sufficiently allege these claims in his complaint. Because the Court resolves the motion applying the standard for a motion to dismiss, the Court does not consider Defendant's request to construe this motion as one for summary judgment and does not consider the information submitted by the parties outside the pleadings.

### A.     *Plaintiff's Claims Are Timely*

Defendants first argue that certain allegation in Plaintiff's complaint are untimely because he failed to report them to the SSA EEO within the time provided by law. *See* Def. Br. at 7. Defendants claim that Plaintiff first contacted the SSA EEO more than 45 days after the last alleged instance of harassment he experienced, and, as a result, Plaintiff's claims are untimely. *See* Def. Br. at 7. Defendants further argue that any later harassing conduct (after Plaintiff's contacting the EEO in July 2016) was "qualitatively different" from the earlier conduct, meaning that Plaintiff cannot rely on the "continuing violation" doctrine to make any earlier harassment actionable. Def. Br. at 8-9. The Court disagrees and finds that Plaintiff alleges sufficient facts to establish a "continuing violation" for the purposes of his hostile work environment claim.

A federal employee like Plaintiff seeking to bring claims under Title VII must exhaust administrative remedies. *Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir. 2008). To initiate the administrative process, the employee must seek consultation and counseling through his employer's EEO within 45 days of the alleged discriminatory acts. 29 C.F.R. § 1614.105(a)(1). He then must file a written complaint with the agency within 15 days of his receipt of a notice of his right to file a discrimination complaint. 29 C.F.R. § 1614.106(b). Finally, if the agency does

not resolve the employee's concerns, he may file a complaint in federal court within 90 days of the agency's final action on the written complaint. 29 C.F.R. § 1314.407(a). Failure to comply with these timelines bars a potential plaintiff's suit on the claims absent equitable tolling. *Briones v. Runyon*, 101 F.3d 287, 290 (2d Cir. 1996).

Under the "continuing violations" doctrine, if one action constituting part of the alleged hostile work environment occurs no more than 45 days before an employee first seeks EEO counseling, "the entire time period of the hostile environment may be considered." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). However, the Second Circuit previously has found that a plaintiff cannot rely on continuing violations if later allegedly harassing behavior is "qualitatively different" from earlier behavior; that is, later "qualitatively different" acts do not "continue" earlier alleged violations. *Fitzgerald v. Henderson*, 251 F.3d 345, 364-65 (2d Cir. 2001); *see also Kimball v. Vill. of Painted Post*, 737 F. App'x 564, 568 (2d Cir. 2018) ("Separate acts are not properly treated as part of a single hostile work environment practice if they are 'qualitatively different' from one another."). Courts considering whether harassing acts are qualitatively similar look to "the type of . . . acts, the frequency of the acts, and the perpetrator of the acts." *Annunziata v. Int'l Brotherhood of Elec. Workers Local Union # 363*, No. 15-cv-03363 (NSR), 2018 WL 2416568, at *13 (S.D.N.Y. May 29, 2018) (quoting *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1309 (10th Cir. 2005)). As another judge in this District has remarked however, this analysis may be brief since "the creation of a hostile work environment over time is the quintessence of a continuing violation." *Williams v. N.Y.C. Dep't of Educ.*, 19-CV-1353 (CM), 2019 WL 4393546, at *7 (S.D.N.Y. Aug. 28, 2019).

In this case, Defendants try to draw a distinction between the "advances" that Plaintiff experienced before he formally sought EEO counseling in 2016 and the "stalking" behavior he experienced thereafter. *See* Def. Br. at 8-9. While there may be subtle differences in Ms. Borges's conduct, the behaviors clearly are related. Ms. Borges was the only person Plaintiff ever claims harassed him. And, Plaintiff's complaint establishes that since the harassing behaviors started in 2015, Ms. Borges's efforts were near constant and all were variations of the same unwelcome interactions with Plaintiff. For example, Plaintiff complains that after he first reported Ms. Borges's behaviors, she would stare angrily at him, and follow him around the office. [Compl. ¶ 48.] Ms. Borges previously had exhibited similar behavior, following Plaintiff around the office and staring at him. [Compl. ¶¶ 32-37.] Based on the allegations of Plaintiff's complaint, none of the behavior about which Plaintiff complains can be considered a "discrete act," rather than a continuous pattern of the same (and perhaps escalating) conduct. *Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d 25, 50 (S.D.N.Y. 2019) ("Examples of discrete acts, for the purposes of the continuing violation doctrine, include disparate disciplining, negative performance reviews, termination, failure to promote, and denial of a preferred job position." (citations omitted)). Indeed, at least one other employee also subjectively viewed Ms. Borges conduct over time to be similar in kind, and that she engaged in "the same behaviors" shortly after a supervisor first intervened. [Compl. ¶ 41.]

The Court concludes that Plaintiff is entitled to rely on the continuing violations doctrine, and as such, all of his claims are timely. The behavior to which he was subjected from 2015 until 2017 constitutes an alleged continuing violation of his right to be free from a hostile work environment. Plaintiff's hostile work claim was timely exhausted.

B.     *Plaintiff Fails to State a Hostile Work Claim.*

While Plaintiff's hostile work claim is timely, it is not on its face "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). As a result, notwithstanding the Court's conclusion about timeliness, Plaintiff's hostile work environment claim is dismissed for failure to state a claim upon which relief can be granted.

To allege a claim of a hostile work environment, a plaintiff must allege facts that show the complained of conduct is severe enough that a "reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309 (S.D.N.Y. 2020) (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)). This is an objective standard. *Id.* For a plaintiff to state a hostile work environment claim he "must plead facts that would tend to show the conduct '(1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex.'" *Falu v. Cnty. of Orange*, 814 F. App'x. 655, 658-59 (2d Cir. 2020) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).

When examining whether a work environment is hostile, a court must consider the "totality of the circumstances." *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d. Cir. 2015). Among other things, a court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23). "Episodic incidents are insufficient to establish a hostile work environment; rather, the

11

incidents 'must be sufficiently continuous and concerted.'" *Falu v. Cty. of Orange*, 814 F. Appx. 655, 659 (2d Cir. 2020) (quoting *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 90 (2d Cir. 2019)). "[The] standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Services Inc.* 523 U.S., 75, 81 (1998)). The Supreme Court has stated that "conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Oncale*, 523 U.S. at 81 (quoting *Harris*, 510 U.S. at 21)). The objective component is "crucial" to the analysis, "to ensure that courts and juries do not mistake ordinary socializing in the workplace . . . for discriminatory 'conditions of employment.'" *Id.* "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

In connection with romantic and sexual advances, the law is clear that mere advances, even repeated, will not constitute a hostile work environment absent further misconduct. *See, e.g.*, *Malin v. Orleans Par. Commc'ns Dist.*, 718 F. App'x 264, 273 (5th Cir. 2018) (concluding that plaintiff failed to state a hostile workplace environment claim where a manager was sexually explicit at work, recounted details of her sex life, and even "twice described specific sexual acts"); *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 58-59 (2d Cir. 2004) (finding that comments made by plaintiff's manager that she could break workplace rules by having sex with him did not create a hostile work environment); *Morris v. Oldham Cty. Fiscal Ct.*, 201 F.3d 784, 790–91 (6th Cir. 2000) (supervisor's harassment which consisted of several dirty jokes he told in plaintiff's presence, an alleged verbal sexual advance, one-time reference to plaintiff as "hot

lips" and isolated comments about plaintiff's state of dress were not sufficiently severe or pervasive to constitute hostile work environment). In cases more analogous to this one, with no explicit romantic or sexual advances, no hostile work environment is created by the non-explicit, even if frequent, comments, requests, and even touching. *Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546, 551–52 (8th Cir. 2007) (finding no severe or pervasive activity where the alleged harasser's conduct included, within, a three-month window, frequently requesting dates, once touching plaintiff's bangs, once wiping water off her pant leg after she was splashed by an inmate, and often making inappropriate comments about plaintiff's body, even when other employees also made similar comments and asked plaintiff out on dates).

Plaintiff alleges numerous specific, instances of Ms. Borges's alleged harassing behavior which he claims constitute severe and pervasive discrimination. While the behavior may be pervasive, especially based on the nearly two-year period over which it occurred, the allegations in the complaint do not allege behavior severe enough to support a claim of a Title VII violation.

Plaintiff first relies on the romantic and sexual overtures Ms. Borges made, including that she repeatedly gave Plaintiff photos of herself, expressed affection toward him (including by stating "te amo" – "I love you" in Spanish), and, in one notable instance at the beginning of her interactions with Plaintiff, left a chocolate rabbit "with a bite taken out of the crotch area" on his desk at work. [Compl. ¶¶ 13, 26-31.] Plaintiff also notes that Ms. Borges repeatedly commented on his appearance, but does not state what she said specifically. [Compl. ¶ 31.] Then, Plaintiff claims that Ms. Borges's behaviors stepped up when she said she knew where he lived, had a weapon, and that her son is a police officer. [Compl. ¶ 50.] There is no dispute that Plaintiff subjectively perceived that Ms. Borges's conduct created a hostile and abusive work environment for Plaintiff. [Compl. ¶¶ 39-40, 56; Opp. at 7-8.] Plaintiff described that he was

"flabbergasted" and was made "uncomfortable" by Ms. Borges's conduct, Compl. ¶¶ 26, 28, and that eventually he sought medical treatment for the stress she caused him. Compl. ¶ 56.

The law is clear, however, that the vast majority of the conduct about which Plaintiff complains does not rise to the level of the "remarkably high' standard" for a hostile work environment. *Nieves v. Dist. Council 37*, No. 04 Civ. 8181 (RJS), 2009 WL 4281454, at *6 (S.D.N.Y. Nov. 24, 2009), *aff'd sub nom. Nieves v. Roberts*, 420 F. App'x 118 (2d Cir. 2011). For example, in the absence of explicit "sexual or offensive" conduct, comments on appearances do not suffice a hostile work environment. *O'Dell v. Trans World Entertainment Corp.*, 153 F.Supp.2d 378, 387 (S.D.N.Y. 2001). Flirtatious, non-sexual messages also are not sufficiently "severe" to establish a hostile work environment. *Id*. Most of Ms. Borges's comments focused on Plaintiff's appearance or were largely innocuous remarks, including asking him to go for walks and stating her fondness for him. [Compl. ¶¶ 18-20, 31-32.] Nowhere in the complaint does Plaintiff allege overt sexual behavior or comment from Ms. Borges that might make these innocuous comments actionable. Indeed, even more severe behavior than what Plaintiff alleges here, like physical grabbing and "fondling" has been held not to constitute severe behavior sufficient to constitute a hostile work environment. *Lekettey v. City of New York*, 637 F. App'x. 659, 661-62 (2d Cir. 2016).

Similarly, photographs displayed in the workplace, without sexual behavior or remarks, do not rise to the level of creating a hostile work environment. *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 322 (S.D.N.Y. 1999). Even when the photographs are partially or fully nude, "[a] momentary display of photos of nudes, without a hint of sexual activity, could not reasonably be found to constitute a hostile work environment." *Id.* While Ms. Borges sent

photos of herself to Plaintiff, they were not nude or overtly sexual photographs of Ms. Borges, and she did not follow them up with overt sexual actions.[2]

Finally, physical actions like blocking someone's way in an office do not create a hostile work environment where there is no allegation of physical contact. *Turner v. Saloon*, 595 F3d. 679, 685 (7th Cir. 2010). Nor, for that matter, do Plaintiff's allegations of "staring" and other menacing behavior from Ms. Borges. *Haggood v. Rubin & Rothman, LLC*, No. 14-cv-34L (SJF) (AKT), 2014 WL 6473527, at *19 (S.D.N.Y. Nov. 17, 2014) (allegations of glaring, excessive scrutiny, and eavesdropping insufficiently severe as a matter of law); *Trachtenberg v. Dep't of Educ.*, 937 F. Supp. 2d 460, 472 (S.D.N.Y. 2013) (allegations that plaintiff was subjected to excessive scrutiny, that she was stared at in an intimidating fashion, and that she received negative performance evaluations, were not sufficient to satisfy the severe and pervasive element of a hostile work environment claim). Plaintiff's allegations of Ms. Borges "sometimes block[ing] his path" and following him around their shared office space cannot meet the severity that is necessary to establish a hostile work environment, especially since Plaintiff does not allege that Ms. Borges actually touched him.

The Court's analysis also is informed by the supervisory "status of the alleged harasser with respect to the complainant." *Bartniak v. Cushman*, 223 F. Supp. 2d 524, 529 (S.D.N.Y. 2008). Plaintiff's claims are even weaker because Ms. Borges never was his supervisor, and instead may have been his subordinate for at least some the period relevant to this case. *See O'Dell*, 153 F. Supp. 2d at 368 ("This conduct, however pervasive, was not sufficiently severe as

---

[2] While not pleaded in the complaint, in his opposition, Plaintiff states that at least some of the photographs Ms. Borges gave him pictured her in a "provocative pose wearing a tight bandage dress." See Opp. at 7. These pictures, absent more, are not sufficient to establish a hostile environment.

15

to alter the conditions of her employment, particularly in light of the fact that Rosen was not O'Dell's supervisor throughout the period of time during which he pursued her.").

Moreover, the law is clear that where the alleged harasser was a non-supervisor, the employer will only be liable if they were "negligent in controlling working conditions." *Lekettey,* 637 F. App'x. at 662 (finding that an employer was not "unresponsive" to their employee's complaints because they investigated the employee's concerns). In urging that this requirement is satisfied, Plaintiff argues that because the SSA found no harassment in its investigation, it implicitly "encouraged" Ms. Borges's behavior to continue. Compl. ¶ 51. To the contrary, the SSA conducted a four-month long investigation of Plaintiff's allegations, discussed Plaintiff's concerns with him on multiple occasions, and before that had a supervisor speak to Ms. Borges about her behavior. Compl. ¶¶ 21-22, 33-34, 39-47, 51; *see also Lekettey,* 637 F. App'x. at 662.

It certainly does appear based on Plaintiff's allegations that Ms. Borges's behavior intensified over time, including more troubling, and perhaps even threatening comments, including that she knew where Plaintiff lived and that she had a weapon. Plaintiff alleges that this happened only once, however. While "even a single act" can establish severe and pervasive behavior," to do so it must be "extraordinarily severe" or must "work a transformation of the plaintiff's workplace." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citations omitted); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1306 (2d Cir. 1995) ("[A] single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability."). However, where there is no allegation of physical assault, veiled threats that were investigated by Plaintiff's employer cannot give rise to a hostile work environment claim. *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d

Cir. 1997) ("When harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that 'the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" (quoting *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir. 1994)). Even with Ms. Borges's veiled indirect threat to Plaintiff, none of the actions Plaintiff alleges constitute severe behavior sufficient to state a claim for a hostile work environment. As a result, the claim is dismissed.

C. *Plaintiff Fails to State a Sex Discrimination and Retaliation Claim.*

Plaintiff's sex discrimination and retaliation claims also fail. To survive a motion to dismiss a sex discrimination claim, a plaintiff must allege that he or she "is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Similarly, a plaintiff asserting a retaliation claim also "must plead facts plausibly showing that [they] suffered an adverse action" that was causally connected to a protected activity under Title VII. *Bliss v. MXK Restaurant Corp*, 220 F. Supp. 3d 419, 425 (S.D.N.Y. 2016). Here, Plaintiff has not pleaded any facts to support the conclusion that he suffered an adverse employment action.

For the purposes of sex discrimination, an "adverse employment action" is a "materially adverse change in the terms and conditions' of employment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (citing *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). For the purposes of a retaliation claim, however, the definition of an "adverse employment action" is broader and includes "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57

17

(2006)); *see also Billings v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 19-cv-11796 (NSR), 2021 WL 4150925 (S.D.N.Y. Sept. 10, 2021) ("In the Title VII retaliation context, an 'adverse employment action' is read more broadly than in the Title VII discrimination context."). As a result, if Plaintiff fails to establish an adverse employment action for the purposes of the retaliation claim, he necessarily also has failed to establish such an action for the purposes of his sex discrimination claim.

Plaintiff argues that the SSA took an adverse employment action against him when it "failed to investigate" his allegations of sexual harassment and failed to take additional actions after initially intervening with Ms. Borges. [Opp. at 9-10.] Plaintiff essentially alleges that the SSA retaliated against him for filing his EEOC complaint about Ms. Borges's behavior by failing to investigation that same behavior. [Compl. ¶¶ 85-91.]

Plaintiff has not plausibly alleged a failure to investigate Ms. Borges's behavior or that any failure was causally linked to his EEOC complaint. For starters, the SSA *did* investigate Plaintiff's claims of harassment. [Compl. ¶¶ 33, 42.] The SSA then determined that the allegations did not rise to the level of actionable discrimination. [Compl. ¶ 44.] After that finding and Plaintiff's filing of his EEOC complaint, he once again complained to a supervisor. [Compl. ¶¶ 53-55.] While no action resulted from that complaint, Plaintiff does not allege how that person, or anyone with whom he had contact, would have been aware of his EEOC complaint or any facts to suggest that no action was taken because of an earlier complaint. In short, Plaintiff has alleged no facts to support a finding that he experienced an adverse employment action in retaliation for any action he took.

Even if Plaintiff plausibly alleged a failure to investigate, his allegations do not rise to the level of adverse employment actions, even for the retaliation claim. "[A]n employer's failure to

investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010). Plaintiff does not allege any other action he took for which the SSA allegedly retaliated against him nor does he make any allegations about any adverse action or any behavior reasonably viewed as retaliatory. And, Plaintiff does not advance any other theory for why the agency's purported failure to investigate was in retaliation for some other protected activity.

That finding also mandates a conclusion that Plaintiff has not alleged an adverse employment action in connection with his sex discrimination claim either. "[I]f a failure to investigate does not qualify as an adverse employment action under Title VII's broader definition of the term for retaliation claims, such failure plainly does not qualify under the stricter definition for discrimination claims." *Brooks v. City of Utica*, 275 F. Supp. 3d 370, 379 (N.D.N.Y. 2017) (quoting *Nunez v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 14-CV-6647, 2015 WL 4605684, at *17 (S.D.N.Y. July 31, 2015)). As a result, Plaintiff's sex discrimination claim fails for the same reason as his retaliation claim, and both are dismissed.

## CONCLUSION

Plaintiff brings this case after experiencing several years of unwanted romantic and sexual advances from a co-worker, who at times worked under his supervision. While he complained to his supervisor and others, Defendants ultimately determined that no actionable harassment or discrimination had occurred. For the reasons stated herein, Plaintiff has failed to allege that Defendants are now liable for Ms. Borges's behavior. While there is no doubt that Plaintiff experienced what he considered to be disturbing conduct, the law is clear that the type of advances about which he complains are not actionable under Title VII. In addition, because

Plaintiff did not suffer any adverse employment action, his sex discrimination and retaliation claims also fail.  Finally, given that he was a federal employee, Plaintiff's claims under New York state and city laws are barred by binding precedent.  Plaintiff's complaint fails to state a claim upon which relief can be granted and Defendants' Motion to Dismiss is GRANTED.

      The Clerk of Court respectfully is requested to close the motion at ECF No. 16 and to mail a copy of this order to Plaintiff.

**SO ORDERED.**

**Date:  September 30, 2021**
       **New York, NY**

                                               **MARY KAY VYSKOCIL**
                                               **United States District Judge**